FARMERS & MERCHANTS STATE BANK OF TRACY v.
HANS FOLMER AND OTHERS.[1]

June 9, 1944.

No. 33,615.

[1]Reported in 15 N. W. (2d) 13.

*William R. Mitchell,* for appellants Farmers & Merchants State Bank and W. N. Stearns.

*Charles L. De Reu,* for appellant B. J. Lattimer.

*L. P. Johnson,* for respondents.

LORING, CHIEF JUSTICE.

This was an action to recover on a check for $516.60 given by defendant Hans Folmer June 15, 1942, to the Walnut Grove Sales Pavilion. The check was endorsed to the plaintiff bank, but before it was presented to the Citizens State Bank of Walnut Grove, upon which it was drawn, payment was stopped by the maker.

The controversy in regard to the check arises out of the purchase by Folmer of certain steers at an auction held June 5, 1942, at the above named pavilion, where W. N. Stearns was auctioneer and the plaintiff bank was clerk. The cattle were taken to the pavilion for the auction sale, put in a pen outside the pavilion but connected with it, and were there subject to inspection prior to being put up for auction. Folmer looked the cattle over while in the pen. There were some 25 of them, but the group which Folmer ultimately bid in consisted of but eight, all steers and, in the trade, commonly called "long yearlings." Folmer, bidding against other bidders, paid $11.50 per hundredweight for the steers. He had them trucked

to his farm and there placed in the barnyard, where they had access to a green pasture. He saw nothing wrong with them that night. It is his testimony that the following morning one or two of them showed evidence of some disease. The sale occurred on a Friday, and on Sunday morning he communicated with the auctioneer and told him that the cattle were suffering from some disease. Stearns immediately communicated the complaint to defendant B. J. Lattimer, a veterinarian of considerable experience. The testimony of Folmer and Lattimer disagrees considerably as to what occurred from that time on, but within a week after the first steer was taken sick, four of them had died; the other four apparently were not afflicted.

By order of court, Stearns and Lattimer were made additional defendants, and the case was tried and went to the jury upon the theory that Stearns was an agent of Lattimer; that the bank was Stearns' agent; that the jury upon the evidence could find that at or prior to the sale the steers were sick from shipping fever or hemorrhagic septicemia; and that if Lattimer knew of the sick condition of the steers at the time he had them put up for sale a verdict might be found against him and his agents for negligence. The court charged the jury:

"If the defendant Lattimer is liable in this case it is on the ground of negligence by him or his agents. * * *

"I instruct you that defendant Lattimer is liable to defendant Folmer for the damage suffered by Folmer, if, by the purchase of the steers mentioned in the evidence, you find that at or prior to the sale the steers were sick from the so-called hemorrhagic septicemia or shipping fever, and that defendant Lattimer knew of the sick condition of the steers at the time of the sale. You cannot find defendant Lattimer liable for Folmer's loss merely because the steers were sick and died. They must have been infected with the disease of shipping fever at or immediately before the sale, and Mr. Lattimer must have known of the diseased condition of the steers at and before the sale."

■ The law with regard to the liability of auctioneers or clerks of sales of the character here involved is simply that of agency. If the auctioneer acts for a disclosed principal, then the principles of that relationship apply, and unless the auctioneer does or says something to make himself responsible to the buyer, he is not liable as a principal to him, but if he sells for an undisclosed principal, he becomes liable for a defect in the title to the property sold or for any misrepresentation as to its condition. 5 Am. Jur., Auctions, §§ 57, 58; 7 C. J. S., Auctions and Auctioneers, § 13b(3) ; Mercer v. Leihy, 139 Mich. 447, 102 N. W. 972; Corn Land Farms Co. v. Barcus, 105 Neb. 869, 182 N. W. 487, 23 A. L. R. 119, and annotation; Trapp & Co. Ltd. v. Prescott, 17 B. C. 298, 21 West. L. R. 521, 5 Dom. L. R. 183, 50 Can. S. C. 263, 18 Dom. L. R. 794.

■ Folmer apparently endeavored to avoid the principles of agency by pleading a counterclaim sounding in tort. The evidence was rather convincing that Folmer was present at the auction block when the auctioneer announced that the cattle came from Lattimer's "dry feed lot." Folmer claimed to be unaware of any announcement to that effect and asserted that he did not know whose cattle were being exposed for sale. He said that he was short of stature and somewhat hard of hearing, and that consequently he did not get all that was said at the sale. He admitted that he had seen the cattle in the pen before they were brought to the auction ring, but, aside from saying that they were "awful looking," he testified to no symptoms whatever of the disease from which they died, or of any other disease. We have carefully scrutinized the record and find no evidence whatever that up to the time of sale the cattle displayed symptoms of any kind of disease. Prior to the sale they were examined by a veterinarian acting under authority of the State Livestock Sanitary Board. The veterinarian was one of wide experience, and he examined the cattle carefully and saw no symptoms. He did not take their temperature, and it is not contended that cattle who display no other symptoms should have their temperature taken before being exposed for sale at public auction. It is claimed that the so-called shipping fever manifests

symptoms at the mouth, the nostrils, the eyes, and the neck of the creature afflicted. There is not one scintilla of evidence that any of these symptoms were present until after the cattle were taken to Folmer's farm and there had the opportunity of eating fresh grass and lying in it. June fifth was a warm sunny day. The sixth, however, was rainy, and the seventh very cold. The state veterinarian, who testified for defendants, said that it was entirely possible that cattle taken from a dry feed lot and exposed to such conditions as those at the Folmer place could be dead in 24 hours; that they might die of pneumonia or shipping fever, which is much like influenza, the germs of which may be carried in the system for long periods of time and be entirely innocuous until something occurs to weaken the condition of the cattle.

We find no evidence whatever in this record which justifies a recovery upon the theory upon which the case was tried and went to the jury. There is no evidence at all that Lattimer had knowledge of the existence of any disease in these cattle or that he was guilty of lack of ordinary care in not discovering a disease if it existed. The evidence is to the effect that shipping fever manifests itself in from two to eight days after exposure, and Folmer so contends. Therefore, it is certain that these cattle were not exposed to it in North Dakota before they came to Minnesota. They were examined and certified by the North Dakota authorities before shipment to Minnesota. In addition, they were inoculated against shipping fever before leaving that state. The only reasonable explanation of their death appears to be their exposure to the conditions at Folmer's farm, which the state veterinarian said could produce their death within 24 hours.

The orders denying the motions of the defendants Stearns and Lattimer for judgment notwithstanding the verdicts are reversed, with directions to enter judgment in their favor; and the order denying the plaintiff's motion for judgment for the full amount of the check is reversed, with directions to enter judgment in favor of plaintiff for that amount.

Appellants have failed to make reference to the folios or pages of the record which support their statement of facts in their brief. They are denied statutory costs in any sum in excess of $15.

Reversed with directions.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.

[1]Reported in 15 N. W. (2d) 112.