Judgment was rendered by the Circuit Court of Limestone County in the amount of $2,310.25 against Joe Welch, individually and doing business as Midway Auto Auction, and in favor of Dwight Mitchell for breach of warranty of title to an automobile.
The evidence shows that Mitchell bought a 1969 Cadillac automobile on November 21, 1972 from Dennis Griffin at the Midway Auto Auction. At this time Mitchell received a bill of sale to the automobile and paid the sum of $2,010.00 to Griffin.
The front of the bill of sale revealed the following:
[EDITORS' NOTE: FORM IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 913 
[EDITORS' NOTE: FORM IS ELECTRONICALLY NON-TRANSFERRABLE.]
The reverse side of the bill of sale contained the following:
 TERMS AND CONDITIONS
1. The buyer of the vehicle described on the reverse side is protected against invalidity of his title to said vehicle resulting because of any prior existing liens, chattel mortgages, conditional sales contract, or on account of the vehicle having been stolen or fraudulently possessed, as of the date of this sale, but such warranty does not cover mere technical defects which can be removed by execution and delivery to buyer, or prior owners, of legally required papers without the necessity of any payment; nor does this warranty cover the mechanical conditions of the vehicle.
2. Unless the motor vehicle received by the buyer conforms in all particulars to the description of the same act out on the face of this Title Warranty and Bill of Sale, the Title Warranty of the named Company shall be void and not binding on said Auction Company or its insurer.
3. This warranty does not protect against interest or defects, liens or claims, effecting this vehicle which are known to the buyer, at time of purchase.
4. This warranty shall be void if the purchase money check or draft by the buyer for the described vehicle is returned unpaid.
5. The liability of the Auction Company named on the face of this Title Warranty and Bill of Sale shall be limited to the sale price of the vehicle, and the amount payable hereunder shall be reduced on account of depreciation by deducting from the sale price 8.3% thereof on the first of each month following the sale date as shown on the face of this instrument; and this Warranty will expire and become void 12 months after said date.
6. This Warranty is expressly limited to the buyer named on the face of this instrument and the same is not negotiable or assignable.
7. In case any claim is made by any person regarding any lien or otherwise effecting the title to this vehicle, whether by suit or otherwise, the buyer shall immediately notify MIDWAY AUTO AUCTION, giving full particulars of the same. The buyer shall not surrender possession of this vehicle, except as required by legal process, nor will he pay or acknowledge any claim effecting title to said vehicle, without the prior approval of MIDWAY AUTO AUCTION.
8. Buyer further agrees to honor payment of any check or draft immediately when presented to his bank for payment. And under no circumstances will stop payment for any reason whatsoever unless approved by authorized representative of MIDWAY AUTO AUCTION. Then if approved, buyer is to return said vehicle at his expense to place of purchase.
9. In case of breach of warranty arising hereunder, the seller agrees to pay all costs of collection of buyer's damages, including a reasonable attorney's fee and the right of exemption is hereby waived as provided in Constitution and laws of the State of Alabama or any other State in the United States.
10. In case the purchase money check or draft given by the buyer for the described vehicle is returned unpaid, than the buyer agrees to pay all costs of collection of said purchase money and all costs of detinue of the described vehicle, including a reasonable attorney's fee and the right of exemption is hereby waived as provided in Constitution and laws of any State in the United States.
11. Purchaser cannot stop payment on any check after leaving the sale with the car.
12. Buyer and Seller agree that MIDWAY AUTO AUCTION is not responsible for odometer reading.
Less than a month later, Mitchell sold the automobile to Randy Hobbs, giving him a bill of sale and the original bill of sale Mitchell received at the Midway Auto Auction from Dennis Griffin.
Within about one month of the purchase of the vehicle in question, Hobbs sold the automobile to Kenneth and Judy Jenkins. Shortly thereafter, Hobbs was advised that the American Credit Company had a lien on the car. Hobbs was sued by the Jenkinses for breach of warranty. Judgment was rendered against Hobbs. Hobbs then sued Mitchell for breach of warranty and Mitchell, in turn, filed a third-party complaint against Welch and Midway Auto Auction also for breach of warranty of the title to the automobile.
At trial Hobbs testified that when he contacted Mitchell about the defective title, Mitchell assured him that the Auto Auction would stand behind the title and the latter *Page 914 
went with Hobbs to talk to Welch about the bad title. Welch informed Hobbs and Mitchell that he did not warrant the title. Hobbs, however, testified that he had been to the Auto Auction many times and that in his best judgment signs were displayed on the company's premises advising that automobile titles were guaranteed by the Auction. In fact, Welch, upon taking the stand in his own behalf, stated categorically that he stood behind the titles of the automobiles sold through his auction.
In addition, Charles Butler testified that in his capacity as an automobile dealer he had bought and sold automobiles through the Midway Auto Auction and that it was a common understanding that Midway Auto Auction guaranteed title to the automobiles which were bought and sold there.
On appeal to this court, Welch argues that the contract of sale for the automobile in question shows that Griffin was the seller and Mitchell was the buyer, and that neither Welch nor Midway Auto Auction is shown to be a party to the transaction. Welch, however, says that if he is considered to be a party to the sale and warranty of title, the agreement violates the statute of frauds in that it was not signed by Welch. Welch also urges that if he is found to have joined in the contract of sale, Mitchell and Griffin by that same instrument released him from any liability for the title. Moreover, he contends that should he be deemed liable for the failure of title, his liability by the express terms of the agreement would be limited to the purchase price of the vehicle and his liability on that amount would be reduced at the rate of 8.3% per month, thus making his liability nonexistent after twelve (12) months.
Mitchell replies that Welch is liable to him for the defective title and argues that an auctioneer may be held personally liable for a defect in title to the property sold if he pledges responsibility for good title or personally contracts with the buyer (either expressly or by implication) that the title is or will be made good. See 7 Am.Jur., Auctionsand Auctioneers, § 65.
In support of his theory of the case, Mitchell asserts that every witness who took the stand, including Welch, testified that Welch guaranteed the title to vehicles sold through his car auction. Furthermore, Mitchell claims that under the terms of the bill of sale, Welch was an agent of the seller (Griffin) and as such promised to ". . . defend the title of said vehicle against the lawful claims and demands of all persons."
The first issue presented on appeal concerns Welch's claim that the contract of sale for the Cadillac automobile demonstrates that neither Welch nor Midway Auto Auction was a party to the transaction between Griffin and Mitchell. We disagree.
The contract and bill of sale representing the sale of the automobile in question is replete with language showing that Welch (and Midway Auto Auction) acted as an agent for the seller Griffin. Indeed, one provision specifically states: "Midway Auto Auction acts only as agents in the transaction of this sale."[1] Moreover, it is a well-established rule that an auctioneer, in selling property for another, is the agent of the seller, and as such, is a part to the contract between the buyer and seller. E.g. Pasley v. Ropp, 334 S.W.2d 254, 80 A.L.R.2d 1231 (Mo.Ct.App.); Tulsa Auto Dealers Auction v. NorthSide State Bank, 431 P.2d 408 (Okla.). Thus it is clear from both the facts presented in this case and the applicable principles of law that Joe Welch was a party to the sales contract entered into by Griffin and Mitchell.
As an alternative ground for claiming that the trial court erred in rendering its judgment against him, Welch contends that even if he is deemed to be a party to the contract representing the sale of the Cadillac automobile, he did not warrant good *Page 915 
title to the vehicle since he was merely the seller's (Griffin's) agent. Furthermore, Welch asserts that Mitchell knew that Griffin was Welch's principal. Thus, Welch argues that he is entitled to rely on an established rule of agency law which holds that in circumstances where an agent has disclosed his principal (or the principal is known to the buyer), the principal is considered to be the vendor and, as such, responsible to the vendee for title. Pursuant to this rule, Welch concludes that as Griffin's agent he (Welch) is not liable for the failure of his principal to obtain good title to the vehicle in question prior to transferring it to Mitchell. Again, however, we must disagree with Welch's contention.
While it is generally true that an auctioneer who acts for a disclosed principal will not be deemed liable for a defect in the title of the property sold, he may nevertheless, by his words or actions, make himself liable to a buyer on the warranty of good title. Indeed, a number of cases have held that an auctioneer, while the agent of another, may personally contract with the buyer that the title of the property being auctioned is or will be made good. Pasley v. Ropp, supra;Farmers Merchants State Bank v. Folmer, 217 Minn. 513,15 N.W.2d 13; Gessler v. Winton, 24 Tenn. App. 411, 145 S.W.2d 789;Ingram v. Canal Bank Trust Co., 13 La.App. 651, 127 So. 462. And in situations where an auctioneer undertakes such a responsibility, he will be liable to the purchaser for any defect in the title of the property sold. Pasley v. Ropp,supra; Farmers Merchants State Bank v. Folmer, supra; Gesslerv. Winton, supra; Ingram v. Canal Bank Trust Co., supra.
In the instant case both the sales document itself and the testimony presented at trial indicate that the auctioneer (Joe Welch), while an agent of the seller (Griffin), personally warranted to the buyer (Mitchell) that the title of the property was valid and that if it was not valid, Welch would "stand behind" the title.
Despite this fact, Welch argues that Midway Auto Auction's agreement to warrant title was not signed by Welch and was therefore void on the ground that an unsigned agreement violates the statute of frauds.
A number of decisions, however, have established the rule that any name or symbol which is used or adopted by a party as that party's signature is sufficient to comply with the statute of frauds.[2] Landeker v. Co-operative Building Bank, 71 Misc. 517,130 N.Y.S. 780; Pearlberg v. Levisohn, 112 Misc. 95,182 N YS. 615; Gessler v. Winton, supra; Degginger v. Martin,48 Wn. 1, 92 P. 674. Thus the question is whether Welch adopted and used the printed name of his firm, Midway Auto Auction, on the bill of sale with the intention that it should authenticate the bill of sale as the contract between the parties. If so, the bill of sale must be treated as the contract of the parties, notwithstanding that it was not formally subscribed to by Welch.
In this instance, the facts as demonstrated from the written memorandum and the circumstances surrounding it make it apparent that Welch adopted the printed name, Midway Auto Auction, as his signature and therefore authenticated the bill of sale in a manner sufficient to comply with the statute of frauds.
This being so, Welch is liable as an ordinary vendor upon the warranty of title contracted for between Midway Auto Auction *Page 916 
and Mitchell. And, as stated earlier, an auctioneer may personally contract with the buyer that the title of the property being auctioned is or will be made good. Moreover, in situations where the actual agreement and the surrounding circumstances indicate that the auctioneer has contracted (either expressly or by implication) that he will be liable to the purchaser for any defect in the title to the property sold, the auctioneer will be held liable if this warranty is breached by reason of an existing lien on the property or because of the superior title of another person to the property.
In the present case it is also relevant to note that the agreement refers to:
 "THE SELLER, in consideration of the provisions and sale price shown below, and the terms and conditions of this Title Warranty and Bill of Sale, has this day sold and transferred to the buyer below the following described motor vehicle. Buyer covenants with MIDWAY AUTO AUCTION to abide by terms and conditions on reverse side."
And the reverse side of the bill of sale sets out several provisions which modify or limit Midway Auto Auction's warranty of title. Among those provisions are the following: (1) the warranty of title does not cover technical defects such as those which can be removed by delivery to the buyer of the necessary legal papers; (2) the warranty of title by the named auction company is void unless the vehicle received by the buyer complies with the description set out on the face of the title warranty and bill of sale; (3) the liability of the auction company named on the face of the title warranty and bill of sale is limited to the sale price of the vehicle; (4) the title warranty expires twelve months after the sales date; (5) the buyer may not pay or acknowledge any claim effecting title to the vehicle without the prior approval of Midway Auto Auction; and finally, (6) in case of a breach of warranty arising under the terms of this agreement the seller agrees to pay all costs of collection of buyer's damages, including a reasonable attorney's fee.
These provisions demonstrate that Welch recognized his obligation to "make good" any defects in the title to the vehicle. Had Welch not undertaken the responsibility of warranting title, it is difficult to understand why he would go to such lengths to limit his liability on that warranty by the use of the language set out on the reverse side of the bill of sale provided by his firm.
Moreover, a number of persons, including Welch himself, testified that Midway Auto Auction guaranteed the title of the vehicles bought and sold through its auto auction. Such being the case, Welch is liable for breaching his warranty of good title.
Nor did the express terms of the warranty limit Welch's liability as he contends. With regard to this claim, Welch submits that the trial court was in error because Mitchell's third-party action against Welch was instituted more than twelve months after the date of the sale of the car. In support of this contention Welch refers to the title warranty provision which states:
 "5. The liability of the Auction Company named on the face of this Title Warranty and Bill of Sale shall be limited to the sale price of the vehicle, and the amount payable hereunder shall be reduced on account of depreciation by deducting from the sale price 8.3% thereof on the first of each month following the sale date as shown on the face of this instrument; and this Warranty will expire and become void 12 months after said date."
However, there is nothing in this provision which specifies a time limit for bringing an action for a breach of warranty of title. Construing a provision almost identical to the one relied upon in this case by Welch, a Massachusetts court inStan Cross Buick v. Concord Auto Auction, 350 Mass. 14,212 N.E.2d 862, concluded that such a provision guaranteed the title of the automobile for the period stated but did not limit the time on which an action for breach of warranty could be brought. We believe this to be a sound decision. *Page 917 
In the case before us, title to the automobile was defective when the sale was made and therefore there was an immediate breach of warranty upon transfer of the title from Griffin to Mitchell. Thus, Mitchell was entitled to bring his action for breach of warranty of title on any date thereafter, subject to the applicable statute of limitations.
From the foregoing it is evident that Welch is liable on his warranty of good title. This obligation, however, is expressly "limited to the sale price of the vehicle." Mitchell purchased the automobile from Griffin for $2,010.00. Consequently, the trial court's award of damages in the amount of $2,310.25 was in error. Therefore, we affirm the court's finding regarding the liability of Joe Welch (and Midway Auto Auction) for breach of warranty of title, but reverse the award of damages and remand the case with instructions that the judgment be entered for Mitchell (the plaintiff below) in the sum of $2,010.00.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P.J., and HOLMES, J., concur.
[1] Although the language following this provision attempts to limit Midway Auto Auction's liability in the transaction (or any results therefrom), the language used is ambiguous and overly broad. Very precise and unambiguous language must be used to exclude so basic a warranty as that of title. Jones v.Linebaugh, 34 Mich. App. 305, 191 N.W.2d 142.
[2] The official comments of Title 7, section 1-201 (39), Code of Alabama 1975 state:
 "The inclusion of authentication in the definition of `signed' is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing."