The plaintiffs, Bill Bradford, Ted Bradford and Don Bradford, d/b/a Bradford Farms, filed an action against the defendant, Northwest Alabama Livestock Association, seeking $6,978.91 for forty-nine head of cattle that had been delivered to and sold by the defendant at an auction sale. Defendant replied that the cattle died before a sale could be consummated and it was therefore not liable.
The defendant is in the business of operating a livestock auction in Franklin County. The farmer brings his cattle to the defendant's sale barn for auction. The cattle are auctioned off to buyers and the farmer receives his money for the cattle when the defendant is paid.
The manager of the defendant's sale barn testified that it was his duty to sell only cattle that were "sound and all right" and that were merchantable.
On March 26, 1978 the plaintiffs penned up forty-nine head of cattle in preparation for their delivery to the defendant the next day. The cattle had been fed a mixture of between thirty and forty percent shelled corn and chicken litter prior to being penned up. The cattle were fed one hundred percent corn after being penned up. The following day the cattle were delivered by the plaintiffs to the defendant for branding and selling.
Forty-eight of the plaintiffs' cattle were sold at the auction. The defendant's manager testified that one of the cows had died prior to the auction and that shortly after the sale he noticed that something appeared to be wrong with another of the cows. He stated that six of the cows had died by 10:30 that evening. The following morning sixteen of the plaintiffs' cattle were found dead. The defendant's manager then telephoned Dr. Allen, a veterinarian, to examine the animals.
Dr. Allen performed an autopsy on two of the animals. He testified that the digestive tracts of these animals were packed with shelled corn. He stated that the cattle died from acute indigestion caused by a sudden change in diet or eating much more corn than they were accustomed to eating. He further stated that a change from a diet of thirty percent corn to one hundred percent corn could have caused the death of the cattle since corn acts somewhat like a blotter and pulls fluids out of the body into the digestive tract and dehydrates the animal.
The plaintiffs also presented testimony at the trial from two experienced farmers who stated that they had never known cattle to be killed by feeding them one hundred percent shelled corn, even if they had previously been fed thirty to forty percent shelled corn.
Eventually twenty-nine of the plaintiffs' cattle died. Although defendant contends that it never received payment from the buyers for the dead cows, plaintiffs say that defendant received the money for the dead cows but gave it back to the buyers. The evidence is unclear as to what occurred. The plaintiffs have received payment from defendant for the remaining twenty cattle which were sold and paid for by buyers. The plaintiffs brought suit seeking payment for forty-nine head of cattle. The jury returned a verdict for the defendant.
Before a review of plaintiffs' appeal is commenced, we wish to state that we will review the issues raised on the same theory that they were tried below. Erwin v. Shiloh Homes, Ala.Civ.App., 360 So.2d 1003 (1978).
The plaintiffs' first contention is that the trial court erred in charging the jury that a seller is responsible for a hidden defect or condition in merchandise sold in an auction sale. In other words, there is no implied warranty of merchantability of goods sold in an auction sale.
Plaintiffs further contend that warranty of title is the only warranty implied at an auction sale, and, in the absence of fraud, the vendor is not responsible for either the quality or goodness of the goods auctioned unless there is an express warranty to that effect made by the vendor. Plaintiffs say *Page 611 
that they made no express warranties to defendant about the health of the cows other than that they were afflicted with brucellosis and that when the cows were sold to the highest bidder the sale was complete and the defendant, sellers' agent, was obligated to collect and remit the money to the plaintiffs for the cows that had been sold.
Defendant replies that the sale of the cattle carried an implied warranty of merchantability and, since the cattle died as a result of overfeeding by plaintiffs, the buyers would not be liable for the sale price of the dead cows. Accordingly, defendant, plaintiff's agent for the sale, should not be held responsible for the sale price of the cattle if the buyers thereof could not be deemed liable for them. In answer to this contention, plaintiffs say they were not merchants within the meaning of § 7-2-104 (1), Code of Alabama 1975, and, therefore, the sale did not carry an implied warranty of merchantability; consequently the jury was in error in so finding. The question was presented to the jury and they found for defendant. Plaintiffs again state that once the auctioneer made the sale, the cattle belonged to the buyers, and death of the cows at that time amounted to a loss to the buyers, not to the sellers.
In Alabama a sale by auction is complete when the auctioneer so announces by fall of the hammer or in any other customary manner. Section 7-2-328 (2), Code of Alabama 1975. Furthermore, every sale of goods, including a sale by auction, includes an implied warranty of merchantability if the seller is a merchant with respect to the goods of that kind. Section 7-2-314, Code of Alabama 1975.
A "merchant" is defined as:
 (1) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill. § 7-2-104 (1).
It has been held that a farmer does not usually come within the definition of a "merchant." Loeb and Co. v. Schreiner, 294 Ala. 722, 321 So.2d 199 (1975). However, in the cited case the supreme court did not expressly exclude farmers from the third category of the merchant definition. There was an indication that if a farmer had employed an agent who by his occupation holds himself out as having knowledge or skill concerning the goods involved in the sale, the farmer could be classified as a "merchant."
In the case at bar the evidence is undisputed that defendant was plaintiffs' agent for the sale of the cattle. Further, it is undisputed that defendant was in the business of selling cattle to prospective buyers and had been so engaged for a number of years and held itself out as having the knowledge and skill to conduct such sales. Based on this evidence we conclude that defendant was a merchant as defined by statute. We further conclude that because of the employment of defendant as agent for the sale of their cattle, plaintiffs also became merchants as defined by the statute, and their sale became subject to the provisions of § 7-2-314, Code of Alabama 1975. Therefore, the court did not err in its charge to the jury and its judgment is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 612