PARKER, Justice.
Alabama Powersport Auction, LLC (“APA”), filed a permissive appeal, pursuant to Rule 5, Aa. R.App. P., from an order of the Limestone Circuit Court denying APA’s motion for a summary judgment in an action filed by James Wiese, as father of Matthew Hunter Wiese (“Matthew”), a minor, deceased, against APA. We affirm the circuit court’s judgment in part, reverse it in part, and remand the cause for proceedings consistent with this opinion.

Facts and Procedural History

The facts are undisputed. In 2005, APA began operating a public auction in Limestone County. APA auctioned various consumer goods including, but not limited to, go-carts; APA regularly auctioned motorcycles and golf carts, among other recreational vehicles. In fact, the word “Powersport” in APA’s name was because “the main things that [APA] sold were four-wheelers, boats, motorcycles, that type of thing.” Generally, all the goods APA sold were on consignment to APA from the owners of the goods; the owners of the goods agreed to pay APA a commission of 10% to 15% of the price APA was able to acquire at auction from a purchaser of the goods.
In the summer of 2005, FF Acquisition Corp., d/b/a Flexible Flyer (“FF Acquisition”), consigned several go-carts to APA to sell at auction. Wiese regularly attended auctions conducted by APA and testified during his deposition that APA regularly auctioned go-carts; one of Wiese’s coworkers had purchased a go-cart at an APA auction. On August 27, 2005, Wiese attended an auction held by APA and purchased a “Yerf Dog Go-Cart,” Model 3206 (“the go-cart”), for his two minor sons. The go-cart was on consignment to APA from FF Acquisition; however, Wiese was *715 not aware that FF Acquisition had manufactured the go-cart.
Soon after purchasing the go-cart, Wiese discovered that the engine would not operate for more than a few minutes at a time. After several failed attempts to repair the go-cart, Wiese stored the go-cart in his garage for almost two years. In September 2007, Wiese repaired the go-cart. On September 17, 2007, Matthew was riding the go-cart and had an accident in which Matthew hit his head on the ground causing a brain injury that resulted in his death on March 6, 2010.
On August 19, 2010, Wiese filed a wrongful-death action against APA. Wiese’s complaint contained one count entitled “wrongful death/breach of warranty.” Wiese alleged that he brought his claim “pursuant to Alabama’s Wrongful Death Act, Alabama Code [1975,] §§ 6-5-391 and 6-5-410 et seq.”[1] Wiese also alleged that APA “impliedly warranted that said product was fit for its intended use as a recreational ‘Fun-Kart’ off-road vehicle, pursuant to the Code of Alabama, 1975, § 7-2-315; and further impliedly warranted that said product was merchantable pursuant to the Code of Alabama, 1975, § 7-2-314.” Further, Wiese alleged that the go-cart “failed, and [APA] breached [its] said implied warranties in that [the go-cart] was not fit for its intended use and/or was not merchantable.” APA answered the complaint.
On June 11, 2012, APA filed a motion for a summary judgment. In its summary-judgment motion, APA argued that, under Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973), ‘Wiese cannot maintain an action for wrongful death based on breach of an implied warranty.” APA also argued that Wiese could not maintain his claim of breach of the implied warranty of merchantability against APA “because [APA] was not a seller or a merchant as required by Alabama’s version of the Uniform Commercial Code.” Lastly, APA argued that Wiese could not maintain his claim of “breach of the implied warranty of fitness for a particular purpose” against APA “because [APA] was not a seller, and because Wiese did not rely on [APA’s] knowledge or skill when purchasing the go-cart.”
On July 31, 2012, Wiese filed a response to APA’s summary-judgment motion. Wiese argued that he could base his wrongful-death action on the alleged breach of an implied warranty because, Wiese alleged, Geohagan had been overruled by this Court in Sledge v. IC Corp., 47 So.3d 243 (Ala.2010). In the alternative, Wiese alleged that he had “stated a claim for compensatory damages for breach of warranty to recover for the compensatory damages suffered by the decedent, Matthew Wiese, between the date of his injury and his death, pursuant to Benefield v. Aquaslide ‘N’ Dive Corp., 406 So.2d 873 (Ala.1981).” Wiese also alleged that he could “maintain a claim [of] breach of merchantability because [APA] was a seller with a non-disclosed principal and a merchant with respect to the go-kart.” Wiese also agreed that APA’s summary-judgment motion was “due to be granted, in part, as to any claims premised on a breach of implied warranty for a particular purpose.”
On August 8, 2012, the circuit court held a hearing on APA’s summary-judgment motion. At the summary-judgment hearing, Wiese requested leave to file an amended complaint, which the circuit court *716 granted. On August 9, 2012, Wiese filed his amended complaint, reasserting his wrongful-death claim based upon APA’s alleged “breach of the implied warranty of merchantability under § 7-2-314[, Ala. Code 1975].” Wiese also asserted a claim of breach of the implied warranty of merchantability independent of his wrongful-death claim; Wiese requested compensatory damages for APA’s alleged breach.
On September 21, 2012, the circuit court denied APA’s summary-judgment motion, stating:
“Before the court is the motion for summary judgment pursuant to Rule 56 of the Alabama Rules of Civil Procedure filed by [APA]. This court heard the oral arguments of the parties on August 8, 2012. At the hearing, the court granted [Wiese] leave to amend his complaint, and [Wiese] filed an amended complaint, which this court has considered. The court holds that a breach of warranty claim can be maintained under Alabama’s wrongful death statute. The court further holds that [Wiese] has a maintainable breach of implied warranty of merchantability claim under pursuant to Benefield v. Aquaslide N’ Dive Corp., 406 So.2d 873 (Ala.1981). [Wiese’s] amended complaint does not assert a claim for breach [of] the implied warranty for a particular purpose, and this part of [APA’s] motion is therefore moot.
“The court having considered the motion of [APA] for summary judgment, upon pleadings, evidentiary submissions, briefs of authority, and the oral arguments of counsel; it is,
“Ordered, adjudged and decreed that [APA’s] motion for a summary judgment is denied.”
On that same day, the circuit court granted APA permission to appeal the circuit court’s denial of APA’s summary-judgment motion pursuant to Rule 5, Ala. R.App. P. Pursuant to Rule 5, APA then filed a petition for permission to appeal with this Court, which this Court granted.

Discussion

In the petition for a permissive appeal, the party seeking to appeal must include a certification by the trial court that the interlocutory order involves a controlling question of law, and the trial court must include in the certification a statement of the controlling question of law. Rule 5(a), Ala. R.App. P. In conducting our de novo review of the question presented on a permissive appeal, “this Court will not expand its review ... beyond the question of law stated by the trial court. Any such expansion would usurp the responsibility entrusted to the trial court by Rule 5(a).” BE & K, Inc. v. Baker, 875 So.2d 1185, 1189 (Ala.2003). Therefore, the only issues before this Court are the controlling questions of law identified by the circuit court in its certification, which are set forth below.

I.

The circuit court certified the first controlling question of law presented by the permissive appeal, as follows:
“[W]hether a breach of warranty claim cannot be maintained under Alabama’s wrongful death statute pursuant to Geohagan v. General Motors Corp., [291 Ala. 167,] 279 So.2d 436 (Ala.1973); or whether this Court is correct that Geohagan was overruled by Sledge v. IC Corporation, 47 So.3d 243 (Ala.2010).”
We answer the second part of this question in the negative: Sledge does not overrule Geohagan and a breach-of-warranty claim cannot be maintained under Alabama’s wrongful-death statute. In Geoha-gan, this Court held that “no contractual cause of action for wrongful death is created by our Uniform Commercial Code arising from a breach of warranty, and that actions for wrongful death can arise in this *717 state and be processed only under our wrongful death acts.” 291 Ala. at 172, 279 So.2d at 440. In so reaching this conclusion, this Court explained:
“So far as can be determined from a reading of our Uniform Commercial Code, there is not one word, sentence, paragraph, clause, or section which in anywise even suggests that for the breach of an express or implied warranty in a contract any person is given a right to maintain an action for a wrongful death. On the other hand, the precision with which the legislature has defined the purpose and policy of the act, limiting the same to commercial transactions, clearly demonstrates that it was not the intent of the legislature in enacting the Uniform Commercial Code to create a wrongful death action in case of a breach of warranty of the contract involved.”
291 Ala. at 171, 279 So.2d at 439.
In Sledge, the case the circuit court incorrectly determined overruled Geohagan, we dismissed the appeal of a personal representative of an estate as being from a nonfinal judgment. The personal representative represented the estate of a minor who had died as the result of injuries she sustained from a vehicular accident that involved a school bus in which she was riding. The personal representative sued numerous parties, including IC Corporation (“IC”) and International Truck and Engine Corporation (“ITEC”), the companies responsible for the design, manufacture, and distribution of the school bus. The personal representative’s complaint sought damages “under various theories of negligence, breach of warranty, products liability, and violation of the Alabama Extended Manufacturer’s Liability Doctrine (‘AEMLD’). [The personal representative] specifically sought damages for [the minor’s] wrongful death.” Sledge, 47 So.3d at 245. IC and ITEC
“filed a joint motion for a partial summary judgment as to all counts alleging that the school bus was defective and/or dangerous because of the lack of seat belts for passengers, arguing that those counts were legislatively preempted as a cause of action by § 16-27-6, Ala.Code 1975,[2] as interpreted by this Court in Dentson v. Eddins & Lee Bus Sales, Inc., 491 So.2d 942 (Ala.1986).”
47 So.3d at 245. The trial court
“entered a partial summary judgment in favor of IC and ITEC “with respect to any claim, either in tort or contract, alleging that the school bus was defective or in breach of warranty due to its failure to provide seatbelts for passengers,’ including ‘any ancillary claims arising out of such defect theory such as failure to warn of the lack of passenger seatbelts and the like.’ The trial court expressly stated that its decision ‘[did] not affect any of the other pending claims of product defect [asserted] by [the] [plaintiffs against [IC and ITEC].’
*718 The trial court certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.”
Id. The personal representative appealed.
As a threshold matter, this Court had to determine whether the trial court’s Rule 54(b), Ala. R. Civ. P., certification was valid. After setting forth pertinent rules of law, this Court held, as follows:
“The complaint alleges several different counts against ITEC and IC, including products liability (count VIII), negligence and/or wanton conduct (count IX), violation of the AEMLD (count X), and breach of warranty (count XI). However, those counts are not separate claims. Instead, [the personal representative] can maintain an action against ITEC and IC only under Ala.Code 1975, § 6-5-410, for wrongful death, which she specifically alleged in count XV of the complaint. Alabama Power Co. v. White, 377 So.2d 930, 933 (Ala.1979) (‘[I]n Alabama there is but one cause of action for wrongful death, i.e., [Ala.] Code 1975, § 6-5-410.’); see also Carter v. City of Birmingham, 444 So.2d 373, 375 (Ala.1983) (noting that ‘under Alabama law only a wrongful death action may be maintained, and only punitive damages are recoverable’). Counts VIII through XI in this case cannot be maintained by [the personal representative] outside a wrongful-death action under § 6-5-410, Ala.Code 1975; instead, those counts are “‘mere variations of legal theory” ’ underlying [the personal representative’s] single wrongful-death claim, Scrushy [ v. Tucker, 955 So.2d 988 (Ala.2006) ] (quoting Steams v. Consolidated Mgmt., Inc., 747 F.2d 1105, 1109 (7th Cir.1984)), and [the personal representative] can recover only one set of damages for all. Trott v. Brinks, Inc., 972 So.2d 81, 84 (Ala.2007) (noting that, in a wrongful-death action, ‘the only recoverable damages are punitive damages’).[4]
“The trial court certified as final its judgment in favor of IC and ITEC as to all allegations related to the lack of passenger seat belts on the school bus. Count IX of the complaint makes allegations of negligence and wantonness based on a failure to provide adequate safety and protection measures. Given the plaintiffs’ explanation that the school bus was defective because it lacked seat belts, the trial court’s partial summary judgment appears to have disposed of that count in full. Similarly, count X seeks damages under the AEMLD based on the lack of adequate safety features that, again, would suggest that that count relates solely to the lack of passenger restraints. Thus, those two counts appear to be wholly adjudicated by the trial court’s partial summary judgment.
“Two other counts, however, appear to remain pending in part. Specifically, count VIII alleges 11 separate defects in the school bus. Of those, some dealt with alleged defects unrelated to the lack of passenger seat belts. Count XI alleges a breach of the implied warranty of suitability and references the dangerous, unsafe, and/or defective condition of the ‘component parts’ of the bus. Those counts — for the most part — allege defects unrelated to the lack of passenger seat belts and survived the trial court’s summary judgment. Thus, portions of [the personal representative’s] original wrongful-death action against ITEC and IC remain pending in the trial court.
“Although counts IX and X appear to be wholly adjudicated, Rule 54(b) does not authorize the entry of final judgment on parts of a claim — here, [the personal representative’s] wrongful-death claim. Haynes v. Alfa Fin. Corp., 730 So.2d 178, 181 (Ala.1999) (‘for a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim *719 or fully dispose of the claims as they relate to at least one part/); Precision American Corp. v. Leasing Serv. Corp., 505 So.2d 380, 381 (Ala.1987) (‘Rule 54(b) does not authorize the entry of final judgment on part of a single claim.’ (citing Tolson v. United States, 732 F.2d 998, 999 (D.C.Cir.1984))). Because the trial court’s partial summary judgment did not ‘direct the entry of a final judgment as to one or more but fewer than all of the claims or parties,’ i.e., because it did not enter a judgment on Sledge’s wrongful-death claim, certification is not available under Rule 54(b); this appeal is thus from a nonfinal judgment and is due to be dismissed.
[[Image here]]
“[4]We see nothing in the arguments before us indicating that [the personal representative] is also seeking damages of the nature found in Benefield v. Aquaslide ‘N’ Dive Corp., 406 So.2d 873 (Ala.1981) (in which the plaintiff sought compensatory damages for breach of warranty to recover for the pain and medical expenses suffered by the decedent between the date of his injury and his death).”
47 So.3d at 247-48 (some footnotes omitted). The only issue decided by this Court in Sledge was that the personal representative’s appeal was from a nonfinal judgment.
In the present case, Wiese argues that, in Sledge, “the Alabama Supreme Court held that a wrongful[-]death claim may be maintained based upon a breach of warranty theory, which overruled Geohagan.” Wiese’s brief, at p. 12. Wiese further argues that
“[t]he plaintiffs complaint [in Sledge] alleged several different counts including violation of AEMLD, breach of implied warranty and wrongful death. The Supreme Court held that the separate counts for AEMLD, breach of implied warranty and the other claims should be construed to state a wrongful death claim. The Court held that those counts were ‘mere variations of legal theory’ underlying [the personal representative’s] single wrongful-death claim. Sledge v. IC Corp., 47 So.3d 243, 247 (Ala.2010) (internal citations omitted).”
Id. at p. 13.
Wiese — and the circuit court — have misread this Court’s holding in Sledge. As set forth above, this Court in Sledge had to address initially whether the trial court had properly certified its partial summary judgment as a final judgment pursuant to Rule 54(b). This Court in Sledge determined only that certification of the trial court’s partial summary judgment under Rule 54(b) was not available because the trial court had not ruled on the personal representative’s wrongful-death claim; it was not necessary for this Court to overrule Geohagan to reach its conclusion. In so holding, this Court merely noted that the personal representative’s breach-of-warranty claim was still pending in the trial court. Although this Court relied upon the fact that the Sledge plaintiffs breach-of-warranty claim — along with another of the plaintiffs claims — was still pending, this Court did not hold in Sledge that a breach-of-warranty claim could actually support a wrongful-death claim. The issue whether a contractual cause of action for wrongful death is created by Alabama’s version of the Uniform Commercial Code (“UCC”) arising from a breach-of-warranty issue was not before the Court in Sledge; the Sledge Court was not asked to overrule Geohagan; and the Sledge Court did not even cite Geohagan.
Based on the foregoing, we answer the circuit court’s first controlling question of law in the negative; Geohagan was not overruled by Sledge and a breach-of-warranty claim cannot be maintained under *720 Alabama’s wrongful-death statute. APA has demonstrated that the circuit court erred in denying its motion for a summary judgment on this issue. Therefore, we reverse the circuit court’s judgment denying APA’s summary-judgment motion insofar as the circuit court held that “a breach of warranty claim can be maintained under Alabama’s wrongful death statute” and remand the cause to the circuit court. On remand, the circuit court is to dismiss Wiese’s wrongful-death claim.

II.

We now turn to the circuit court’s second controlling question of law, which the circuit court set forth, as follows:
“[W]hether [Wiese’s] breach of implied warranty of merchantability claim under ... Benefield v. Aquaslide 'N' Dive Corp., 406 So.2d 873 (Ala.l981),[3] cannot be maintained against [APA] because [APA] was not a seller or merchant as required by Alabama’s version of the Uniform Commercial Code; or whether this court is correct that Bradford v. Northwest Alabama Livestock Ass’n, 379 So.2d 609, 611 (Ala.Civ.App.1980), is controlling and every sale of goods, including a sale by auction, includes an implied warranty of merchantability if the seller is a merchant with respect to the goods of that kind.”
It is not clear from the wording of the question exactly what controlling question of law the circuit court would have this Court answer; thus, we will re-frame the question.[4] In reframing the above question, however, we are mindful that this Court is to provide a de novo review of the controlling question of law presented by the circuit court, and, as noted above, “this Court will not expand its review on permissive appeal beyond the question of law stated by the trial court. Any such expansion would usurp the responsibility entrusted to the trial court by Rule 5(a).” Baker, 875 So.2d at 1189. Therefore, in refraining the controlling question of law, we are cautious not to expand our review beyond the question of law stated by the circuit court. With these considerations in mind, we reframe the circuit court’s controlling question of law as follows:
Whether an auctioneer selling consigned goods on behalf of a seller may be held liable under Alabama’s version of the Uniform Commercial Code as a merchant-seller for a breach of an implied warranty of merchantability.
We answer this question in the affirmative.
In Ex parte General Motors Corp., 769 So.2d 903, 911-12 (Ala.1999), this Court set forth the following concerning the implied warranty of merchantability:
“The implied warranty of merchantability is found in § 7-2-314(1), Ala.Code 1975, which provides:
“‘Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.’
“Subsection (2)(c) of that Code section provides that to be considered merchantable, goods must be ‘fit for the *721 ordinary purposes for which such goods are used.’ As the Court of Civil Appeals held, ‘[t]o establish his claim of breach of the implied warranty of merchantability, [the plaintiff] must “ ‘prove the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach.’ ” ’ [Tucker v. General Motors Corp.,] 769 So.2d [895,] 901 [ (Ala.Civ.App.1998) ] (quoting Barrington Corp. v. Patrick Lumber Co., 447 So.2d 785, 787 (Ala.Civ.App.1984), quoting, in turn, Storey v. Day Heating and Air Conditioning Co., 56 Ala.App. 81, 88, 319 So.2d 279, 280 (1975)).”
An implied warranty of merchantability exists only if there is a “seller,” as that term is defined in § 7-2-103, Ala.Code 1975, who is a “merchant with respect to goods of that kind.” § 7-2-314(1), Ala. Code 1975. Section 7-2-103(l)(d) defines a “seller” as “a person who sells or contracts to sell goods”; § 7-2-104(1), Ala. Code 1975, defines “merchant” as follows:
“ ‘Merchant’ means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.”
It is well settled that under Alabama law an auctioneer may be considered a merchant under Alabama’s version of the UCC. See Bradford v. Northwest Alabama Livestock Ass’n, 379 So.2d 609, 611 (Ala.Civ.App.1980) (holding that a livestock auctioneer was a merchant because it “was in the business of selling cattle to prospective buyers and had been so engaged for a number of years and held itself out as having the knowledge and skill to conduct such sales”). However, the parties have not directed this Court’s attention to any Alabama precedent concerning whether an auctioneer selling goods on behalf of a consignor — and, thus, not holding title to the goods being sold, see Bischoff v. Thomasson, 400 So.2d 359 (Ala.l981)(not-ing that a consignee does not hold title to the goods consigned to it by a consignor; title passes from the consignor to the buyer) — may be considered a seller under Alabama’s version of the UCC and held liable as a merchant-seller for a breach of an implied warranty of merchantability.
This very issue was considered by the United States Court of Appeals for the Tenth Circuit in Powers v. Coffeyville Livestock Sales Co., 665 F.2d 311 (10th Cir.1981). In Powers, Jack and Rita Powers, owners of a livestock auction, purchased several hundred head of cattle at a livestock auction conducted by Coffeyville Livestock Sales Co., Inc. (“Coffeyville”). The Powerses then sold some of the cattle at an auction they conducted. The buyer later brought a civil action against the Powerses, alleging that the cattle he had purchased were diseased and dying. The buyer’s lawsuit against the Powerses resulted in a $38,360 judgment against the Powerses based upon the breach of an implied warranty of merchantability. The Powerses then sought indemnification from Coffeyville in the federal district court. The federal district court concluded “that Coffeyville never held title to the cattle claimed to be unmerchantable ‘and consequently cannot be liable as a “seller” under any implied warranty theory.’ ” 665 F.2d at 312. The Powerses appealed.
The question before the Tenth Circuit Court of Appeals was whether, under Kansas law, an auctioneer can be held liable as a merchant-seller for purposes of § 84-2-314, Kan. Stat. Ann., which is identical to § 7-2-314, Ala.Code 1975, and which states, in pertinent part:
*722 “(1) Unless excluded or modified (section 84-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.”
The Tenth Circuit Court of Appeals determined that Coffeyville was a merchant under § 84-2-104, Kan. Stat. Ann., which is identical to § 7-2-104, Ala.Code 1975, and which states, in pertinent part:
“(1) ‘Merchant’ means a person who deals in goods of the kind or otherwise by the person’s occupation holds oneself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by such person’s employment of an agent or broker or other intermediary who by such person’s occupation holds oneself out as having such knowledge or skill.”
After determining that Coffeyville was a merchant, the Tenth Circuit then stated that “[s]ince only merchants who are ‘sellers’ are liable for breach of the implied warranty of merchantability, we must also determine whether Coffeyville is a seller under the Uniform Commercial Code.” Section 84-2-103(d), Kan. Stat. Ann., which is identical to § 7-2-103(d), Ala. Code 1975, defines a seller as “a person who sells or contracts to sell goods.” In considering whether Coffeyville was a seller, the Tenth Circuit held:
“Certainly an auctioneer sells goods, although generally as agent for someone else. The statute provides no explicit guidance on whether an auctioneer acting as agent for another is a seller under the statute. When the statute is not specific we look to the common law as an aid to interpretation. Kan. Stat. Ann. § 84 — 1—103;[5] Service Iron Foundry, Inc. v. M.A. Bell Co., 2 Kan.App.2d 662, 588 P.2d 463, 472 (1978).
“Under traditional agency law, an agent is liable as if it were the principal when the agent acts for an undisclosed principal. This rule applies whether the agent holds itself out as principal or only as agent but does not disclose the identity of its principal. Bruce v. Smith, 204 Kan. 473, 464 P.2d 224 (1970); Restatement (Second) of Agency §§ 321-22 (1958). Applying this common law rule to auctioneers, courts in other jurisdictions have held that an auctioneer is liable as a seller if the auctioneer fails to disclose to the buyer the identity of the principal. E.g., Universal C.I.T. Credit Corp. v. State Farm Mutual Automobile Insurance Co., 493 S.W.2d 385, 390 (Mo.Ct.App.1973); Itoh v. Kimi Sales, Ltd., 74 Misc.2d 402, 345 N.Y.S.2d 416, 420 (Civ.Ct.N.Y.1973); Hagen v. Brzozowski, 336 S.W.2d 213, 215-16 (Tex.Civ.App.1960). The UCC did not alter the common law application of agency prin *723 ciples to sales made by an auctioneer. See Kan. Stat. Ann. § 84-1-103. We believe the Kansas courts would hold that an auctioneer who fails to disclose the identity of its principal and who regularly auctions merchandise of a particular kind is, with regard to those goods, a merchant seller within the coverage of section 84-2-314.”
Powers, 665 F.2d at 312-13.[6]
The Tenth Circuit Court of Appeals concluded that “[t]he record ... suggests that Coffeyville did not disclose the owners’ identities to the Powers[es], but the trial court’s opinion does not expressly address this issue, nor whether the exceptions to implied warranties in section 84-2-316 apply.” 665 F.2d at 313. As a result, the Tenth Circuit reversed the judgment of the federal district court and remanded the case “for a finding by the trial court as to whether Coffeyville disclosed the identity of the owners of the cattle sold to the Powers[es], and for other proceedings consistent with this opinion.” 665 F.2d at 313.
In Abercrombie v. Nashville Auto Auction, Inc., 541 So.2d 516 (Ala.1989), as in the cases cited in Powers above, this Court stated that an auctioneer may be liable as a seller under § 7-2-312, Ala.Code 1975, for a breach of the warranty of title if the auctioneer fails to disclose to the buyer the identity of the principal:
“It has been held in Alabama that an auctioneer, in selling property for another, is the agent of the seller, and that if the auctioneer acts on behalf of a disclosed principal, he is not liable to the buyer for a defect in the title to the property sold, provided that he does not incur liability by personally warranting good title. Welch v. Mitchell, 351 So.2d 911 (Ala.Civ.App.1977); see, also, 7 Am. Jur.2d Auctions and Auctioneers § 66 (1980). The rationale underlying this rule is that an auctioneer who, in dischárging his ordinary duties, sells property on behalf of a disclosed principal generally is not regarded as warranting good title. On the other hand, an auctioneer who sells property without disclosing his principal is, in the eyes of the law, considered as the vendor himself and, as such, is responsible to the buyer for a defect in the title. See 7 Am. Jur.2d, supra, § 67.”
Abercrombie, 541 So.2d at 518. In so holding in Abercrombie, this Court relied upon Welch v. Mitchell, 351 So.2d 911, 915 (Ala.Civ.App.1977), in which the Court of Civil Appeals stated that “an auctioneer who acts for a disclosed principal will not be deemed liable for a defect in the title of the property sold.”
Therefore, based on the reasoning in Poiuers and the common-law principles of agency set forth by this Court in Abercrombie, we hold that an auctioneer may be held liable as a merchant-seller for the implied warranty of merchantability under § 7-2-314 if the auctioneer fails to disclose *724 the principal for whom the auctioneer is selling the goods.
We note that the rule set forth in Welch and applied in Abercrombie is related to the application of the warranty of title set forth in § 7-2-312, Ala.Code 1975, which states:
“(1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that:
“(a) The title conveyed shall be good, and its transfer rightful; and
“(b) The goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.
“(2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.
“(3) Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like, but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.”
(Emphasis added.) By holding in Aber-crombie that an auctioneer may be liable as a seller for the warranty of title if the auctioneer fails to disclose the principal, this Court held that an auctioneer may be liable as a seller under § 7-2-312. In a general sense, the question before the Court in Abercrombie was essentially the same question before this Court: Can an auctioneer be held liable as a seller under Alabama’s version of the UCC? We answered that question in the affirmative in Abercrombie concerning the warranty of title, and we do so in this case concerning the implied warranty of merchantability.
APA does not argue that Powers is not analogous to this case; instead, APA argues that it is not necessary for this Court to consider principles of common law, as allowed under § 7-1-103, Ala.Code 1975, set forth supra in note 5, because, APA argues, the definition of “seller” in § 7-2-103(d), Ala.Code 1975, is clear. However, consistent with § 7-1-103, we have considered “the principles of law and equity, including ... the law relative to ... principal and agent ... [to] supplement” the provisions of Alabama’s version of the UCC.
In summary, based on the common-law principles of agency set forth in Abercrom-bie, an auctioneer selling consigned goods on behalf of an undisclosed principal may be held liable as a merchant-seller for a breach of the implied warranty of merchantability under § 7-2-314, Ala.Code 1975. As a result, we answer the circuit court’s second controlling question of law in the affirmative, and we affirm the circuit court’s judgment denying APA’s summary-judgment motion as to Wiese’s breach-of-the-implied-warranty-of-merchantability claim.

Conclusion

Based on the foregoing, we affirm the circuit court’s judgment in part, reverse the circuit court’s judgment in part, and remand the cause for proceedings consistent with this opinion.[7]
*725 AFFIRMED IN PART; REVERSED IN PART; AND .REMANDED.
MURDOCK, MAIN, and WISE, JJ., concur.
SHAW, J., concurs in the result.
MOORE, C.J., and STUART, BOLIN, and BRYAN, JJ., concur in part and dissent in part.

. Section 6-5-391, Ala.Code 1975, states, in pertinent part:
"(b) An action under subsection (a) for the wrongful death of the minor shall be a bar to another action either under this section or under Section 6-5-410[, Ala.Code 1975].”

. Section 16-27-6, Ala.Code 1975, states:
“(a) No school bus shall be operated on a public street, highway or elsewhere, unless it shall be equipped with a seat belt for the driver.
“(b) The driver of a school bus while transporting pupils on a public street or highway or elsewhere shall wear a properly fastened seat belt when the bus is in motion. Failure of a bus driver to comply with this requirement shall be prima facie evidence of nonfeasance of duty, and any driver who fails to comply with this requirement shall be subject to dismissal.
“(c) Every contract between a board of education and a school bus contract operator shall contain a clause requiring the driver of a school bus to wear a properly fastened seat belt when the bus is being used for the transporting of pupils on a public street or highway or elsewhere. Failure of any driver to comply with this requirement shall constitute a breach of contract on the part of the contract operator.”

. In Benefield v. Aquaslide 'N' Dive Corp., 406 So.2d 873, 876 (Ala.1981), this Court held that "[t]he breach of warranty (contract) claim is a separate and distinct claim from the wrongful death (tort) claim and seeks compensatory damages only, not for the wrongful death of the decedent but for the injuries suffered before his death.”

. This Court has reworded controlling questions of law framed by a trial court for permissive appeal pursuant to Rule 5 before. See Okeke v. Craig, 782 So.2d 281, 282 (Ala.2000).

. Section 84-1-103, Kan. Stat. Ann., which is identical to § 7-1-103, Ala.Code 1975, states:
"(a) The uniform commercial code must be liberally construed and applied to promote its underlying purposes and policies, which are:
"(1) To simplify, clarify, and modernize the law governing commercial transactions;
"(2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and
"(3) to make uniform the law among the various jurisdictions.
"(b) Unless displaced by the particular provisions of the uniform commercial code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.”

. Accord Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 2-103:37 (3d ed. 2012) (citing Powers, supra) ("If the auctioneer does not disclose the identity of the principal, the auctioneer is the seller. Although the auctioneer does not transfer title, he or she makes a contract of sale and, thus, comes within the definition of 'seller.'”); §§ 2-314:580 and 2-314:581 ("A sale by auction is a sale and consequently the same warranties arise when the sale is made through an auctioneer as when a sale is made directly by the principal.... When the auctioneer sells without identifying the principal on whose behalf it is selling, the auctioneer has the status of a partially-disclosed agent, and is deemed the seller and is liable for any warranty, express or implied, that is involved in the sale.”); and 12 Richard A. Lord, Williston on Contracts § 35:43, at 555 (4th ed. 2007) (“The rule of liability which ensues from a nondisclosure of the principal has been applied to hold a selling agent who does not disclose the principal to all the general liabilities of any other seller.”).

. APA encourages this Court to apply our decision in this case prospectively only. Prospective application is not appropriate in this case, however. First, we held that Geohagan was not overruled by Sledge. Second, in determining that an auctioneer may be held liable as a merchant-seller for a breach of an implied warranty of merchantability, our holding is based on well established principles of Alabama law; thus, this Court's *725 decision in the present case was "clearly foreshadowed.” See McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156, 165 (Ala.1996).