BOLIN, Justice.
Dothan/Houston County Communications District and Ozark/Dale County E-911, Inc. (“the districts”), sued Century Tel of Alabama, LLC (“CTA”), and Qwest Communications Company, LLC (“Qwest”) (hereinafter collectively referred to as “the defendants”), seeking, among other things, to recover E-911 charges5 that the' defendants were alleged to have not properly billed and collected in accordance with the Emergency Telephone Service Act, § 11-98-1 et seq., Ala.Code 1975 (“thé ETSA”). The defendants moved the circuit court to dismiss the complaint pursuant to Rule 12(b)(6), Ala. R. Civ. P. The circuit court denied the defendants’ motion. The defendants then-petitioned this Court, pursuant to Rule 5, Ala. R.App. P., for permission to appeal from the circuit, court’s interlocutory order. We granted the petition.

I. Facts and Procedural History

A. The Pre-2012 Local 911 Fee System

1. The Emergency-Communications Districts

In 1984, the Alabama Legislature enacted the ETSA[1] for the purpose of shortening the time for a citizen to request and receive emergency-services aid via emergency 911. § 11-98-3, Ala.Code 1975. The ETSA provided that the governing body of a municipality or county may create an emergency-communications district within *458 its jurisdiction to provide enhanced 911 (“E-911”) service, which was defined in the 1984 act as “a telephone exchange communications service whereby a public safety answering point (PSAP) designated by the customer may receive telephone calls dialed to the telephone number 911.” § 11-98-1(3), AIa.Code 1975.[2] The ETSA provided that the emergency-communications districts are political and legal subdivisions of the State of Alabama with the power to sue and be sued in their corporate names. .§ 11-98-2, Ala.Code 1975. In addition to the “authority, and powers necessary to establish, operate, maintain, and replace an emergency communications system,” the ETSA granted the emergency-communications districts the authority “to prosecute[ ] and defend civil actions in any court having jurisdiction.” § 11 — 98—4(f)(1), Ala. Code 1975. The districts are emergency-communications districts created pursuant to the ETSA and provide E-911 services to the citizens of Houston and Dale Counties.
Before the ETSA was amended effective October 1, 2013, the emergency-communications districts were funded by emergency-telephone-service charges (“911 charges”) that were assessed to users of residential- and business-telephone services by the emergency-communications districts. § ll-98-5(a)(l), Ala.Code 1975. The ETSA required that 911 charges be assessed for every “exchange access line” or “exchange access facility,” i.e., telephone line. § ll-98-5(c), Ala.Code 1975. The ETSA also required that 911 charges be assessed against those receiving telephone service through voice-over-internet-protocol (“VoIP”) or other “similar technology.” § ll-98-5.1(c), Ala.Code 1975.[3] The telephone-service providers were required by the ETSA to collect the 911 charges from the telephone-service users and then to remit those 911 charges to the emergency-communications districts on a monthly basis. § ll-98-5(c) and (e), Ala. Code 1975. The telephone-service providers were entitled to retain from the gross receipts remitted to the emergency-communications districts an administrative fee in an amount equal to one percent of the total remitted. § ll-98-5(e), Ala.Code 1975. The defendants are telephone-service providers.
The emergency-communications districts were entitled to audit annually the books and records of the telephone-service providers with respect to the collection and remittance of 911 charges. § ll-98-5(e), Ala.Code 1975. The districts levied the 911 charges in Houston and Dale Counties pursuant to the ETSA.

2. The Commercial Mobile Radio Service Board

Pursuant to § 11-98-7 of the ETSA, the Commercial Mobile Radio Service (“CMRS”) Board (“the CMRS Board”) was created for the purpose of levying a CMRS emergency-telephone-service charge on each CMRS connection — which is defined as a mobile or wireless telephone number — that has a place of primary use within the State of Alabama. §§ 11-98-6(5) and -7(b)(1), Ala.Code 1975. Before October 1, 2013, each CMRS provider was required to collect the CMRS 911 service charges from each CMRS connection to which it provided CMRS service and then to remit those service charges to the CMRS Board. § 11-98-8, Ala.Code 1975. The moneys remitted to the CMRS Board were deposited into the CMRS fund, which was maintained by the CMRS Board. *459 § 11-98-7(2), Ala.Code 1975. Those funds were subsequently dispersed to the emergency-communications districts. § ■ 11 — 98— 7(3), Ala. Code 1975.
The CMRS providers were required to provide to the emergency-communications-district management-review board an annual accounting of the CMRS 911 service charges collected and remitted. § 11 — 98— 8(e), Ala.Code 1975. The CMRS providers were required by the ETSA to collect and remit the CMRS 911 service charges to the CMRS Board. However, if the CMRS providers failed to do so, the CMRS Board could seek enforcement of the statute in the Montgomery Circuit Court. § 11 — 98— 8(g), Ala.Code.1975.

B, The 2012 Amendments to the ETSA

In 2012, the Alabama Legislature enacted Act No. 2012-293, Ala. Acts 2012, which substantially overhauled the ETSA. The legislature created a statewide 911 Board (“the 911 Board”) and 911 fund. §§ 11 — 98— 4.1 and 11-98-5.2, Ala.Code 1975, respectively. The 911 Board replaced and superseded the CMRS Board, and the CMRS fund was incorporated into the newly created 911 fund. § 11-98-4.1, Ala.Code 1975. However, the legislature left intact §§ 11-98-2 and 11-98-4, which created and gave authority to the emergency-communications districts. Thus, the districts continue to exist and have all the powers and authority set forth by §§ 11-98-2 and 11-98^1 prior to the 2012 amendments to the ETSA.
As part of the- 2012 amendments, the legislature substantially amended § 11-98-5 to provide for a “single, monthly statewide 911 charge ... on each active voice communications service connection [wireline and mobile telephones] in Alabama that is technically capable of accessing a 911 system.” § ll-98-5(a), Ala.Code 1975. The telephone-service providers are required to collect the 911 charges from the telephone-service subscribers on a monthly basis and then to remit the 911 charges collected to the 911 Board. § 11-98-5(a) and (b), Ala:Code 1975. The 911 charges are then deposited in the 911 fund for subsequent distribution to the emergency-communications districts. § 11-98-5.2(b)(1), Ala.Code 1975. The amended version of § 11-98-5 did not retain subsection (e), which allowed the emergency-communications districts, at their discretion, to require the telephone-service providers to submit to an annual audit of the service providers’ books and records with respect to the collection and remittance of 911 charges. Instead, the legislature added § 11-98-13, Ala.Code 1975, which requires the 911 Board to conduct a biennial audit of the telephone-service providers in order to ensure the accuracy of the 911 charges and other information required to be submitted to the 911 Board by the telephone-service providers. The 2012 amendments to the ETSA became effective on October 1,2013.

C. The Districts’ Audit Request ■ and Complaint

The districts sought to audit the defendants’ billing records to determine the defendants’ compliance, prior to the 2012 legislative amendments to the ETSA, with the ETSA. The districts contend that they initiated the audits before the October 1, 2013, effective date of the 2012 amendments to the ETSA. The defendants refused to comply with the requested audits. The districts state that they have determined from the limited information available to them that the defendants have provided telephone services to customers within the districts’ jurisdiction without collecting and remitting to the districts the required 911 charges, in violation of the ETSA. The districts state that by billing and collecting less than the required amount of 911 charges, the defendants *460 have been able to offer their telephone services at a lower cost to customers and have thereby gained a competitive advantage over other telephone-service providers.
On January 21, 2014, the districts sued the defendants, asserting claims alleging a violation of the ETSA for failing to properly bill, collect, and remit the 911 fees; negligence; wantonness; and breach of a fiduciary duty. The districts sought to require the defendants to comply with the requests for audits and to recover and remit any unpaid 911 charges.
On March 10, 2014, the defendants moved the' Houston Circuit Court to dismiss the districts’ complaint pursuant' to Rule 12(b)(6), Ala. R, Civ. P. The defendants noted that the legislature repealed the local 911 fee system as part of the 2012 amendments to the ETSA and replaced it with the single statewide fee scheme that became effective on October 1, 2013. The defendants contended that all the duties the districts alleged the defendants violated were part of the now repealed local 911 fee system. Relying upon Cooper v. Ken Hilton Ford, 486 So.2d 424 (Ala.1986), the defendants argued that no cause of action may be brought for violation of a statute after the statute being sued upon has been repealed. Thus, the defendants argued that the districts had no cause of action and that their complaint must, be dismissed. The defendants further argued that fhe ETSA lacks an express private right of action to enforce any alleged violation of the act; that the districts had failed to state any tort, or wantonness claim; and that the ETSA does .not create a fiduciary duty on the part of the defendants to collect 911 fees.
On July 23, 2014, the circuit, court entered an order denying the defendants’ motion to dismiss, or, in the alternative, for a .more definite statement. On July 30, 2014, the defendants moved the circuit court to certify for interlocutory appeal a controlling question of law for an appeal by permission pursuant to Rule 5, Ala. R.App, P. The circuit court ■ certified for interlocutory appeal two controlling questions of law, and the defendants petitioned this Court for a permissive appeal. Rule 5, Ala. R.App. P. This Court granted the petition.
: II, Standards of Review ■
This Court has stated:
“ ‘The appropriate standard of review under Rule 12(b)(6) [, Ala. R. Civ. Pi;] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this- Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal-is proper only when- it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d. 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).’
“Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993),”
DGB, LLC v. Hinds, 55 So.3d 218, 223 (Ala.2010). ■ “ ‘Inasmuch as the issue before us is whether the trial court correctly denied a Rule 12(b)(6), Ala. R. Civ. P„ motion to dismiss, “[t]his Court must ac *461 cept the allegations of the complaint- as true.” ’ ” Ex parte Walker, 97 So.3d 747, 749 (Ala.2012) (quoting Ex parte Alabama Dep’t of Youth Servs., 880 So.2d 393, 397 (Ala.2003)).

III. Discussion

This Court has stated the following with regard to permissive appeals pursuant to Rule 5(a), Ala, R.App, P.;
“In the petition for a permissive appeal, the party seeking to appeal must include a certification by the trial court that the interlocutory- order involves -a controlling question of law, and the trial court must include in the certification a statement of the.controlling question of law. Rulé 5(a), Ala: R.App. P. In conducting our; de novo review of the question presented on a permissive appeal, ‘this Court will not expand its . review ... beyond the question of law stated by the trial court. Any such expansion would usurp the responsibility entrusted to the trial court by Rule 5(a).’ BE & K, Inc. v. Baker, 875 So.2d 1185, 1189 (Ala.2003).”
Alabama Powersport Auction, LLC v. Wiese, 143 So.3d 713, 716 (Ala.2013). The circuit court certified the two following controlling questions of law:
“(1) Does Act 2012-293, which eliminated local 911 charges from October 1, 2013, forward, prohibit local 911 districts from suing for damages from telephone providers for allegedly under-billing 911 fees prior to October 1,2013?
“(2) Does the [ETSA] authorize . a • right of action by local 911 districts seeking damages from telephone providers for allegedly .failing to bill 911 charges?”. ,
In addition to seeking the recovery-of any unpaid 911 charges required to be levied prior to October 1, 2013, the districts also sought in their -complaint to require the defendants to “provide information relating to their service within the Districts and their billing, collecting and remitting of 911 charges.” However, the circuit court did not include in its certified controlling questions of law any reference to the districts’ request for an accounting. Because this Court will not expand its review- beyond the questions of law stated by the circuit court, we will not address any issue relating to that. request. Wiese, supra. Therefore, the .only issues before this Court are those included in the controlling questions of law identified in the circuit court’s certification.

Question 1

“Does Act 2012-293, which eliminated local 911 charges from October 1, 2013, forward, prohibit local 911 districts from suing for damages from telephone providers for allegedly under-billing 911 fees prior to October 1, 2013?”
The defendants contend that the repealed-statute rule prohibits the districts from suing to collect unpaid 911 charges requested to be levied prior to October 1, 2013. Specifically, the defendants argue that no cause of action may be brought for violation of a statute after that statute has been repealed. This Court has explained:
' “ ‘ “There can be no question that the effect of the repeal of a statute or part thereof is to destroy the effectiveness of the repealed act in futuro and to divest the right to proceed under the statute, which, except as to proceedings past and closed, is considered as if. it had never existed.” ’ ”
Cooper v. Ken Hilton Ford Sales, Inc., 486 So.2d 424, 425 (Ala.1986) (quoting Wilkinson v. State ex rel. Morgan, 396 So.2d 86, 88 (Ala.1981), quoting in turn Saad v. Cline, 51 Ala.App. 668, 670, 288 So.2d 731, 732 (Ala.Civ.App.1974)(emphasis omitted)). *462 However, the repealed-statute rule is not without an exception.
' “It is a general rule ... that when a statute is repealed it stands as if it had never existed, except as to vested rights which have accrued under its operation ... ‘The Legislature has full power to take away by statute rights, not vested, which havé been conferred by statute. If the repealing statute is general and unconditional, without a saving of pending proceedings and prosecutions, these fall with the statute which may have authorized them.’ ”
Blake v. State ex rel. Going, 178 Ala. 407, 411, 59 So. 623, 625 (1912) (quoting Luke v. Calhoun, 56 Ala. 415, 416 (1876)). Thus, the repealed-statute rule will not operate to divest a claimant’s right to proceed under a repealed statute when the claimant had accrued vested rights under the prior operation of the statute.
The defendants contend that Act No. 2012-298 “unquestionably” repealed all the original local 911 fee provisions of the ETSA and replaced those provisions with the statewide 911 fee provisions. The defendants argue that the repealing legislation did not contain a savings clause, which would have allowed the local 911 fee provisions to be enforced beyond their repeal. Thus, the defendants argue that any right the districts had to sue to recover unpaid local 911 charges under the original provisions of the ETSA disappeared when the local 911 fee provisions were repealed effective October 1, 2013.
The districts respond by arguing that the repealed-statute rule does not operate to bar their claim because, they say, Act No. 2012-293 did not repeal the pertinent provisions of the ETSA; rather, they assert, Act No. 2012-293 simply amended the pertinent portions of the ETSA. We agree.
Before Act No. 2012-293 became effective on October 1, 2013, § 11-98-5 imposed a duty upon the telephone-service providers to collect the 911 charges from the telephone-service subscribers and then to remit those charges to the emergeney-communicatioris districts on a monthly basis. In 2012, the legislature enacted Act No. 2012-293, which expressly provided.in the title: “Enrolled, An Act relating to E-911 services, to amend Section[ ] ... 11-98-5.” The amended version of § 11-98-5 created a “single, monthly statewide 911 charge” on each wireline- and mobile-telephone connection in Alabama capable of accessing 911. § ll-98-5(a), Ala.Code 1975. Pursuant to § 11-98-5, as amended, the telephone-service providers are required to collect the 911 charges from the telephone-service subscribers-on a monthly basis and then to remit those collected 911 charges to the statewide 911 Board created in the 2012 act, §§ 11-98-4.1 and 11-98-5(a) and (b), Ala.Code 1975. The 911 charges are then deposited into the newly created 911 fund for subsequent distribution to the emergency-communications districts. § ll-98-5.2(b)(l), Ala. Code 1975.
Section 11-98-5, which provides for the imposition, collection, and remittance of the 911 charges was, according to the express language of Act No. 2012-293, amended and not repealed. The amended version simply changed the manner in which the 911 charges were billed, collected, and remitted. Rather than the telephone-service providers’ collecting the 911 chargés from the telephone-service subscribers and then remitting those 911 charges directly to' the local emergency-communications districts as was the procedure under the pre-amendment version of § 11-98-5, the -telephone-service providers now collect the 911 charges from the telephone-service subscribers and remit those charges to the 911 Board, which, in turn, *463 disburses those charges to the local emergency-communications districts.
The amended version of the ETSA makes it clear that the new statewide 911 Board was entitled to receive on October 1, 2013, the effective date of the amendments, the new statewide 911 charges collected from the telephone-service subscribers by the telephone-service providers. The express amendatory language to the ETSA provides that the statewide 911 Board is entitled to receive only the new statewide 911 charges on October 1, 2013, and has no rights to the pre-October 1, 2013, local 911 fees that were required to be collected by the telephone-service providers and remitted to the local emergency-communications districts. The local emergency-communications districts were left intact by Act No. 2012-293, as the act did not repeal or substantially amend §§ 11-98-2 and 11-98-4, which created and gave authority to the local emergency-communications districts. Accordingly, we conclude that Act No. 2012-293 amended § 11-98-5, rather than repealed it, and does not act to divest the local emergency-communications districts of their rights to receive the local 911 fees levied before October 1, 2013.[4] Therefore, we answer the first certified question in the negative.

Question 2

“Does the [ETSA] authorize a right of action by local 911 districts seeking damages from telephone providers for allegedly failing to bill 911 charges?”
The defendants argue that the districts’ claims are barred because, they argue, the ETSA does not authorize a private right of action against telephone-service providers for failing to bill and collect the 911 charges from the telephone-service subscribers. “One claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute.” American Auto. Ins. Co. v. McDonald, 812 So.2d 309, 311 (Ala.2001).
Prior to October 1, 2013, the telephone-service providers had a duty under the ETSA to bill and collect from the telephone-service subscribers the local 911 fees and then to remit those fees to the local emergency-communications districts. As discussed above, the 2012 amendments to the ETSA did not divest the local emergency-communications districts of their rights to receive the local 911 fees levied prior to October 1,2013.
Section ll-98^(f), Ala.Code 1975, as amended, provides:
“In addition to other authority and powers necessary to establish, operate, maintain, and replace an emergency communication system, the board of commissioners shall have the following authority:
“(1) To sue and be sued, to prosecute, and defend civil actions in any court having jurisdiction of the subject matter and of the parties.”
Here, the legislature, expressly vested the local emergency-communications districts with the right “to prosecute ... civil actions” necessary to operate or maintain the emergency-communications system. The districts’ action alleging a violation of the ETSA by the defendants for failing to properly bill and collect the 911 fees from the telephone-service subscribers certainly falls within the scope of those civil actions expressly authorized by the current § 11-98 — 4(f), because the enforcement of the defendants’ duties to bill and collect the *464 911 fees used to fund the E-911 services is necessary to operate and maintain the emergency-communications system. Accordingly, we answer the second certified question in the affirmative.[5]

Conclusion

For the above-stated reasons, we affirm the circuit court’s- judgment' denying the defendants’ motion to dismiss.
AFFIRMED.
MOORE, C.J., and STUART, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result.

. The legislature by Act No, 2012-293, Ala, Acts 2012, significantly revised the ETSA, effective October 1, 2013. Quotations from and citations to the ETSA in this opinion are the pre-October 1, 2013, version of the ETSA, unless otherwise indicated. See discussion infra.

. The amendment to § 11-98-1, effective October 1, 2013, revised this definition, which is now found at § 11 — 98—1(a)(8).

. Section 11-98-5.1 was repealed effective October 1, 2013.

. Because we have concluded that Act No. 2012-293 amended rather than repealed § 11-98-5, we need not discuss the vested-right exception to the repealed-statute rule.

. Because we have concluded that the districts have a statutory right of action, we pretermit discussion of the remaining issues related to this question.