[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13781
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-00675-RDP


STAN MCADAMS,

Plaintiff-Appellant,

versus

JEFFERSON COUNTY 911 EMERGENCY COMMUNICATIONS DISTRICT,
INC, THE,
an Alabama domestic corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 24, 2019)

Before ED CARNES, Chief Judge, JILL PRYOR, and ANDERSON, Circuit
Judges.

PER CURIAM:

In June 2018 Stan McAdams filed an amended complaint alleging that the Jefferson County 911 Emergency Communications District demoted him because of his multiple sclerosis in violation of Title I of the Americans with Disabilities Act. The following month the district court granted Jefferson County 911's motion to dismiss the complaint, finding that Jefferson County 911 was an arm of the State of Alabama and thus entitled to sovereign immunity under the Eleventh Amendment. We disagree.

I.

Alabama's Emergency Telephone Service Act allows municipalities and counties to establish emergency communications districts as "political and legal subdivisions of the state, with power to sue and be sued in their corporate names and to incur debt and issue bonds" that are "solely the obligations of the district and not the State of Alabama" and payable only "out of the income, revenues, and receipts of the district." Ala. Code § 11-98-2. Alabama law authorizes these municipalities and counties to appoint a board of commissioners with extensive independent authority over communications districts. Id. § 11-98-4(a), (f). Boards of commissioners have "complete and sole authority to appoint a chairman and any other officers," id. § 11-98-4(b), and the ability to "employ such employees, experts, and consultants as [the board] deems necessary," id. § 11-98-4(d). "In addition to other authority and powers necessary to establish, operate, maintain,

2

and replace a communication system," a district's board of commissioners has the authority to "sue and be sued, to prosecute, and defend civil actions in any court," to borrow money, to construct communication systems, and to "enter into contracts or agreements with public or private safety agencies" — among other powers. Id. § 11-98-4(f).

In 2012 Alabama "substantially overhauled the ETSA," revamping how communications districts were overseen and funded but leaving "intact §§ 11–98–2 and 11–98–4, which created and gave authority to the emergency-communications districts." Century Tel of Ala., LLC v. Dothan/Houston Cty. Commc'ns Dist., 197 So. 3d 456, 459 (Ala. 2015). The legislature replaced the Commercial Mobile Radio Service Board with a statewide 911 Board, id., whose members are appointed by the governor, Ala. Code § 11-98-4.1(b). The amendments implemented a single fee collected by the 911 Commission, with proceeds deposited into a statewide 911 Fund to be distributed to individual districts according to a statutory formula. Century, 197 So. 3d at 459; see Ala. Code § 11-98-5.2(b). But Alabama law stipulates that "revenues deposited into the 911 Fund shall not be monies or property of the state and shall not be subject to appropriation by the Legislature." Ala. Code § 11-98-5.2(a). And despite all of the 2012 amendments' reforms, "the districts continue to exist and have all the powers and

3

authority set forth by §§ 11–98–2 and 11–98–4 prior to the 2012 amendments to the ETSA."  Century, 197 So. 3d at 459.

## II.

In its order granting Jefferson County 911's motion to dismiss, the district court found that communications districts are entitled to sovereign immunity despite the Alabama Supreme Court's opinion in Wassman v. Mobile County Communications District, 665 So. 2d 941 (Ala. 1995).  In Wassman the Alabama Supreme Court determined that the Mobile County Communications District was a "government entity" subject to a statutory cap on damages under state law, but was not an "agency of the state" entitled to sovereign immunity under the Alabama constitution.  Id. at 942–43.  The Alabama Supreme Court based its conclusion on two considerations:  (1) The district was operated by the county and city and was created by a county ordinance as authorized by state law, and (2) "the 'power to sue and to be sued' language in the empowering statute is incompatible with the constitutional immunity with which state agencies are cloaked."  Id. at 943.

The district court in this case found that the subsequent passage of the 2012 amendments justified distinguishing Wassman for two reasons.  First, the court found that although communications districts were previously "under the authority of counties and municipalities" the amendments put them "under the authority of the statewide 911 Board."  Second, the court noted that although "communications

4

districts were funded by the municipalities in each district" before the 2012 amendments, they are now "funded through statewide 911 charges."

### III.

We review de novo a district court's order granting or denying an Eleventh Amendment sovereign immunity defense. Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 344 F.3d 1288, 1290 (11th Cir. 2003). "Under the traditional Eleventh Amendment paradigm, states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis." United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist., 739 F.3d 598, 601 (11th Cir. 2014).

The Eleventh Amendment shields a state's "officers and entities when they act as an 'arm of the state.'" Id. at 601. We balance four factors to determine whether an entity acts as an "arm of the state" entitled to sovereign immunity: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Manders v. Lee, 338 F.3d 1304, 1309 (11th Cir. 2003). These factors "must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. at 1308.

5

The first factor weighs against granting Jefferson County 911 sovereign immunity because the Alabama Supreme Court held in <u>Wassman</u> that the Mobile County Communications District was not an agency of the state.  See <u>Tuveson v. Fla. Governor's Council on Indian Affairs, Inc.</u>, 734 F.2d 730, 732 (11th Cir. 1984) (stating that the "most important factor" in evaluating whether an entity is entitled to sovereign immunity "is how the entity has been treated by the state courts.").  We disagree with the district court's conclusion that <u>Wassman</u> is distinguishable because it was decided before the 2012 amendments were enacted. The district court found that the amendments significantly changed how Alabama law defines communications districts because the amendments undermined local authority over districts and changed how they are funded.  But we are unconvinced that communications districts are no longer "under the authority of counties and municipalities," as the district court believed.  The Alabama Supreme Court has recognized that the 2012 amendments "left intact" the significant independent authority that §§ 11–98–2 and 11–98–4 bestow on locally appointed boards of commissioners.  <u>Century</u>, 197 So. 3d at 459.  And although the district court is correct that the amendments changed how communications districts are funded, this was not a factor that the Alabama Supreme Court considered in <u>Wassman</u>. That decision was instead based on two considerations that remain just as relevant today:  (1) communications districts are created by local ordinance and operated by

6

local authorities as authorized by state law, and (2) the "power to sue and be sued" language "is incompatible with the constitutional immunity with which state agencies are cloaked." Wassman, 665 So. 2d at 943.

The second factor also weighs strongly against considering communications districts arms of the state because there is no evidence that the State of Alabama exerts any control over the particular function at issue here:  personnel decisions within a communications district.  Jefferson County 911 has pointed to no authority indicating that the 911 Board or any other state agency has control over such personnel decisions, and Alabama law stipulates that a local board of commissioners has the power to "employ such employees, experts, and consultants as [the board] deems necessary," Ala. Code § 11-98-4(d).  So personnel decisions are made by local boards of commissioners, which are in turn appointed by counties and municipalities.

The third factor, where the entity derives its funds, does not support granting sovereign immunity.  Although the 2012 amendments created a statewide 911 Fund, they specifically stated that revenues deposited into the fund are not "monies or property of the state."  Ala. Code § 11-98-5.2(a).  It is true that the 911 Fund pools revenues statewide before redistributing them to particular districts.  But these distributions are determined by statute and not by the 911 Board or any legislative oversight committee.  See id. § 11-98-5.2(b)(2).

7

The final factor, whether Alabama is responsible for judgments against communications districts, weighs against considering them arms of the state. Under state law a communications district can "sue and be sued" and incur debts that are "solely the obligations of the district and not the State of Alabama" and payable only "out of the income, revenues, and receipts of the district." Id. § 11-98-2. So it does not appear that Alabama would be financially responsible for a judgment against Jefferson County 911.

After considering all of these factors, we conclude that when Jefferson County 911 demoted McAdams it did not act as an arm of the state entitled to sovereign immunity.

**VACATED AND REMANDED.**